## D. v. D.

(*April* 2, 1941.)

TERRY, J., sitting.

*Henry R. Isaacs* for plaintiff.

*David J. Reinhardt, Jr.,* for respondent.

Superior Court for New Castle County, No. 63, March Term, 1941.

Terry, Judge.

In determining the first objection raised by the respondent under (a), aforesaid, it becomes necessary to examine into the real source and extent of the jurisdiction of this Court under the subject at hand.

It is interesting to note that the legal power to grant divorces and annual marriages in England has been a recognized right imposed in the Courts of that country for centuries. However, this jurisdiction was not vested in the Common Law Courts, but instead in the Ecclesiastical Courts (a generic name for certain Courts having cognizance mainly of spiritual matters). This jurisdiction, however, terminated around 1870 during the reign of Victoria, at which time, by statute, a tribunal designated as "The Probate Admirality and Divorce Court" was created, and from that period all divorces and annulment of marriages have been heard and disposed of by that tribunal.

Under the administration of the Eccleciastical Courts of England, the principles and practice governing this subject ripened into a settled course and body of jurisprudence similar to that of the Courts of Chancery, and, more or less, constituted with those systems a part of the general law of England, and by a broad and large use of the term a part of the Common Law of England.

This country during its early growth, and even now in its mature stage, has adopted the theories and principles of the English common law, except in those phases of our life whereby necessity has decreed a new order or change brought about by our progress, wherein a deviation has taken place from the English common law principles theretofore adopted.

In following the English jurisdiction, the Law Courts

in this country were without power to grant divorces or annual marriages until such a time that the Legislatures of the various States, by legislative enactment, conferred that power upon the Courts, as we do not have, and never have had, Ecclesiastical Courts such as under the English procedure to assume jurisdiction.

The Legislature of this State during its early period of existence retained the jurisdiction to hear and determine actions for divorces. However, under the Constitution of 1897 the jurisdiction regarding divorces and annulment of marriages was vested in the Superior Court, and, since that time, the Superior Court, by proper statute under the constitutional provision aforesaid, has been the only tribunal vested with the power to hear and determine divorces and annul marriages. It necessarily became the duty of the Superior Court in passing on these matters to do so in accordance with the statute conferring that power, together with established principles of law which were incidental to the operation of said statute.

While the power was vested in the Superior Court to grant divorces and annual marriages, yet, no mode was prescribed by the statute relating to the proof necessary to sustain a petition in divorce or annulment of marriage, nor the manner in which such proof should be obtained; therefore, it seems that the Legislature, in eliminating these features from the statute, must have necessarily intended to confer upon the Superior Court the powers incidental to cause to become effective its grant of jurisdiction. Otherwise, in certain cases, the justice sought to be obtained would be defeated.

The petition of the plaintiff, to cause to be annulled his marriage to the respondent, meets the requirements of Section 3497 of the *Revised Code* of 1935 concerning "An-

nulment of Marriage". The question to be determined, therefore, under the present petition of the plaintiff, is whether or not the Superior Court without statutory authority can compel the respondent in this action to submit her person to a physical examination, in order to determine as to whether or not she possesses an incurable physical impotency or incapacity for copulation, since the statute conferring the power to grant an annulment of marriage does not provide for a physical examination of either of the parties to the litigation.

Incurable physical impotency or incapacity for copulation is a canonical disability which was cognizable by the Ecclesiastical Courts, and, since we have no such Courts in this country, it necessarily follows that, in the absence of any statute upon the subject, no Court has jurisdiction to annul a marriage on either of these grounds.

It is generally looked upon by all Courts that capability of consummation is an implied term in every marriage contract, and is so essential that upon the discovery of the entire incapacity upon one of the parties as to this duty of wedlock the other may, in a Court of competent jurisdiction, have a decree annulling said marriage.

Under Section 3497 of the *Revised Code* of 1935, incurable physical impotency or incapacity for copulation would not be a ground for a decree annulling a marriage contract, unless said impotency or incapacity existed at the time of marriage, and that the party making the application was ignorant of such impotency or incapacity.

It has been more or less universally held that the confession of the respondent alone, as in this case, will not warrant a decree, but, in connection with other evidence, the admissions of the respondent are valuable. The proof required in such an action is more exacting than in ordinary

cases, due to the fact that an incurable physical impotency or incapacity for copulation must be proved by the plaintiff as of the time of marriage.

The Ecclesiastical Courts in England universally ruled that the Court had the power to compel the parties in such a suit to submit to a surgical examination whenever it was necessary to ascertain facts which were essential to the proper decision of the cause. *Devanbagh v. Devanbagh,* 5 *Paige* (*N. Y.*) 554, 28 *Am. Dec.* 443.

The settled practice of the English Courts, in a case such as this, was to require a medical examination and to compel the party to submit to it, if he would not do so voluntarily. The reason was well stated by Lord Stowell:

"It has been said that the means resorted to for proof on these occasions are offensive to natural modesty; but nature has provided no other means and we must be under the necessity of saying that all relief shall be denied or of applying the means within our power. The Court must not sacrifice justice to notions of delicacy of its own."

The State of New York enacted a statute making impotence a ground for annulling a marriage, and this statute, as ours was completely silent as to the power of the Court to compel an examination to furnish the proof of its existence. However, the New York Courts have held that it was clearly within their power to require a physical examination upon the ground that such being the settled practice in England it has been adopted as law here; and, also, that it was a necessary means to enable the Court to make effectual and operative the power given to annul marriages for such cause . *Newell v. Newell,* 9 *Paige* (*N. Y.*) 25; *Devanbagh v. Devanbagh,* 5 *Paige* (*N. Y.*) 554, 28 *Am. Dec.* 443. Other Courts recognizing this principle—*Shafto v. Shafto,* 28 *N. J. Eq.* 34; 14 *R. C. L.* 720.

It is necessary that all Courts administering justice be

acquainted with all material facts. In the case I have before me it is essential, in order to administer justice to both parties concerned, that before a decree could be properly entered the fact that an incurable physical impotency of the respondent or her incapacity for copulation must be definitely established.

I, therefore, must dismiss from further consideration the respondent's objection under (a).

Now I shall discuss the respondent's objection under (b)—that a physical examination of the respondent should not be ordered by the Court because the respondent is of the age of 53 years.

The respondent contends that because of her advanced age of life such an exposure would be felt with greater abhorence and complied with with more reluctance than in the case of a younger person. The authorities unquestionably reveal that age is an element of consideration, and Courts, in dealing with aged persons, should exercise sound discretion and conclude only to compel an examination upon proper reflection. *Shafto v. Shafto*, 28 *N. J. Eq.* 34.

On the question of age Sir John Nicholl once said:
"A man of sixty who marries a woman of fifty-two should be contented to take her 'tanquam soror'." *Brown v. Brown*, 1 *Hagg. Ecc.* 523.

In the case before me, however, somewhat different circumstances exist. The respondent admitted to having voluntarily submitted her person for an examination by a gynecologist of her own choosing. Therefore, it seems to me that her contention, that her advanced age is a reason for her not wanting to be further examined, is not consistent with her own voluntary act. Consequently, I can reach

no other conclusion, under the circumstances of this case, than that the objection raised by the respondent under (b), aforesaid, has been more or less answered by her own voluntary act, which could not be construed as being consistent with her contention thereunder.

Now the respondent's last objection, (c)—that a further examination of the respondent should not be ordered, as she already has submitted to an examination by a reputable gynecologist who resides within the jurisdiction of this Court, and is available to be properly brought before this Court as a witness.

There exists a well established rule that where a woman in an action such as this has submitted her person to a physical examination by a reputable gynecologist she will not be compelled to submit to further examinations of such character—provided the specialist can be readily obtained. *Devanbagh v. Devenbagh,* 5 *Paige* (*N. Y.*) 554, 28 *Am. Dec.* 443; 14 *R. C. L.* 720.

Where it concerns the question of violence to the refined and delicate feelings of a woman, great care should be taken to safeguard her modesty. Examinations of the type herein sought are always indelicate, and even the manner of proof must be very distressing to the feelings of the parties.

The respondent in this case has refused the plaintiff the right to confer with her specialist who made the examination, and contends at the same time that she should not be subjected to a further examination by a gynecologist appointed by the Court.

The Superior Court of this State, while not clothed with equitable powers, nevertheless, has from the commencement of its jurisdiction in such matters assumed that

persons appearing before it wherein relief is sought, and those protesting the enforcement of such relief, shall do so in a manner consistent with the true facts and circumstances of each case—always with the thought of assisting and not deterring in any manner the Court's right to have placed before it all matters indispensable to a fair determination of the cause in which justice can be served to the best interest of the parties involved.

The purpose or extent of the examination by the gynecologist heretofore made has not been developed.. I have no knowledge as to whether or not the examination made was to determine if the respondent possessed an incurable physical impotency or incapacity for copulation. Therefore, it seems to me, even admitting the general rule to be as contended by the respondent, that such a rule was never intended to prevail under facts and circumstances such as are before me.

During the argument it was agreed that the plaintiff and respondent were married in the year 1929, and subsequent thereto lived together and occupied the same room for the period of eleven years.

The question of delay in applying for relief has not been raised. However, I find the law to be that delay is not alone a ground for refusing relief. *B. v. M.*, 2 *Rob. Ecc.* 580; *T. v. D., L. R.* 1 *Prob. & Div.* 127; *Castleden v. Castleden*, 9 *H. of L. Cas.* 186. Particularly where there is evidence to show that the delay on the part of the husband arose from ignorance and from a supposition that matters were as they should be. *Lewis v. Hayward*, 35 *L. J.* (*N. S.*) *Prob. & M.* 105. However, in cases of great delay, after years of married life, unequivocal proof should be required.

The basic principle for the rule that delay is not a sufficient ground to deny relief apparently is based upon the

theory that, while the capacity for copulation is not present as of the date of marriage, medical science has established the fact that over a period of years this incapacity on the part of either party may be removed without the need of surgical assistance.

An order will be entered in conformity with the prayer of the plaintiff's petition.

 However, in entering such an order as requested, I would not feel disposed to select a gynecologist other than the one that has heretofore examined the respondent. I state this because every care should be taken by the Court to save the respondent as much embarrassment as possible. Her age, her feeling regarding such a personal matter, and her modesty have been fully considered.